IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01621-PAB-MJW

JAMES GREGORY MAY,

     Plaintiff,

v.

U.S. BANK, N.A., as trustee for Structured Asset Securities Corporation Trust 2005-WF2,
WELLS FARGO BANK, N.A.,
ROBERT J. ARONOWITZ, individually and as a member of Aronowitz & Mecklenburg, LLP,
LISA CANCANON, individually and as a member of Aronowitz & Mecklenburg, LLP, and
DOES 1-100,

     Defendants.

---

**ORDER**

---

This matter is before the Court on that portion of plaintiff James Gregory May's Motion for TRO and Preliminary Injunction of Rule 120 [Docket No. 3] seeking a preliminary injunction. The Court held an evidentiary hearing on the motion on August 16, 2013.

## I.  Findings of Fact

Upon review of plaintiff's motion and the testimony and exhibits admitted during the hearing, the Court makes the following findings:

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiff asserts violations of his due process and equal protection rights pursuant to 42 U.S.C. § 1983. Docket No. 1 at 4-5.

2.      Venue is proper pursuant to 28 U.S.C. § 1391 because the property at issue is located within this District.

3.      In 2005, plaintiff purchased real property located at 517 S. 2nd Avenue, Brighton, CO 80601 (the "Residence"), as identified by the Deed of Trust.  Def. Ex. A.[1]

4.      On February 7, 2005, plaintiff executed an Adjustable Rate Note (the "Note") in the amount of $256,500.00 in favor of defendant Wells Fargo Bank, N.A. ("Wells Fargo").  Def. Ex. C.  The Note was secured by a Deed of Trust assigning Wells Fargo a security interest in the Residence.  Def. Ex. A.  The terms of the Note initially required that plaintiff provide monthly payments in the amount of $1,529.62 starting in April 2005.  Def. Ex. C. at 1, ¶ 3.  Beginning in March 2007, plaintiff's monthly payments would vary depending on newly adjusted interest rates.  *Id.* at 1, ¶ 4(A).  Plaintiff testified that he is currently in default on the Note and has not made a payment on the Note since January 2010.

5.      Plaintiff testified that, before 2013, defendants initiated two non-judicial foreclosure proceedings against the Residence.  In 2009, a non-judicial foreclosure proceeding was initiated by the Castle Group.  However, plaintiff entered into a loan modification agreement with Wells Fargo in December 2009 and the non-judicial foreclosure proceeding was withdrawn.  After plaintiff defaulted on the loan modification, on April 8, 2011, defendant Aronowitz & Mecklenburg, LLP on behalf of its client, U.S. Bank, N.A., submitted a notice of election and demand to the Adams County Public

---

[1]Because both sides identified their exhibits by letter, e.g. "Ex. A," the references to exhibits admitted during the hearing are identified herein as "Pl. Ex. ___" or "Def. Ex. ___ ."

Trustee (the "Public Trustee").  Docket No. 1-1 at 26 (Pl. Ex. G).  Defendants withdrew the second non-judicial foreclosure proceeding against plaintiff, even though the Adams County District Court had granted an order authorizing the sale.

6.      In January 2013, Aronowitz & Mecklenburg filed a third motion for an order authorizing sale pursuant to Rule 120 of the Colorado Rules of Civil Procedure with the Adams County District Court.  Plaintiff challenged the motion and appeared at a contested hearing in front of the Adams County District Court on April 16, 2013.  At the Rule 120 hearing, plaintiff contested U.S. Bank's standing to foreclose on the Residence, arguing that U.S. Bank was not the real party in interest.  Plaintiff testified that, at the Rule 120 hearing, he reviewed defendants' certified copies of the Deed of Trust and the Note.  Plaintiff testified that he believed that Wells Fargo, and not U.S. Bank, was the real party in interest because Wells Fargo issued the Note, it services the Note, and it is the holder of the mortgage insurance policy.  Plaintiff did not challenge the allegation that he was in default on his mortgage during the Rule 120 hearing.

7.      Plaintiff testified that the Adams County District Court did not require that defendants provide the original version of the Note and did not review defendants' certified copies of the Deed of Trust and the Note.  However, plaintiff acknowledged that, because he was ten minutes late to the Rule 120 hearing, it was possible that the Adams County District Court reviewed defendants' certified copies before his arrival.

8.      Shortly after the Rule 120 hearing, the Adams County District Court issued an order authorizing the sale of the Residence.

9.      During their cross-examination of plaintiff, defendants Wells Fargo and

U.S. Bank (the "bank defendants") presented plaintiff with a Deed of Trust that they purported was the original Deed of Trust that plaintiff signed on February 7, 2005.[2] Plaintiff admitted that the document was in fact the original Deed of Trust he signed on February 7, 2005.  He acknowledged that his signature appeared in black ink on the original Deed of Trust.  Plaintiff also testified that the certified copy of the original Deed of Trust that the bank defendants admitted into evidence as Def. Ex. A was an accurate copy of the original Deed of Trust and that the certified copy of the Deed of Trust was the same copy the bank defendants presented at the Rule 120 hearing.

10.     The bank defendants admitted into evidence a certified copy of the recorded assignment of the Deed of Trust from Wells Fargo to U.S. Bank as the trustee for the Structured Asset Securities Corporation Trust 2005-WF2.  Def. Ex. B.

11.     The bank defendants admitted into evidence a certified copy of the Note. Def. Ex. C.  The certified copy of the Note has an endorsement on page 3, which says "Pay to the order of," underneath which are two stars.  Def. Ex. C. at 3.  Below these two stars, the endorsement states "without recourse" followed by a Wells Fargo signature block signed by Joan Mills, Wells Fargo's assistant vice-president.  *Id.*  Below the Wells Fargo signature block, the endorsement has two additional stars followed by handwriting that states "U.S. Bank national association as trustee for Structured Asset Securities Corporation Trust 2005-WF2."  *Id.*  The last page of the certified copy of the Note has a signed "Allonge for the Purpose of Endorsement" assigning the Note from Wells Fargo to U.S. Bank.  *Id.* at 5.

---

[2]Defendants did not seek to admit the alleged original Deed of Trust into evidence.

4

12.     During their cross-examination of plaintiff, the bank defendants showed plaintiff a document they claimed was the original Note that plaintiff signed on February 7, 2005.[3]  The pages of this document were legal-sized and the Addendum was on 8 1/2 by 11 inch paper.  In addition, the purported original Note had an Allonge assigning the Note from Wells Fargo to U.S. Bank.  After plaintiff examined the document, plaintiff testified that it was an accurate copy of the Note the bank defendants admitted into evidence as Def. Ex. C and presented at the Rule 120 hearing.  Plaintiff testified that he could not admit that the document was the original Note because he could not remember whether the endorsement on the Note was there at the time he signed it in February 2005.  Plaintiff testified that he remembered that the Note he signed was on legal-sized paper, but could not remember whether the Addendum was on legal-sized paper.  Plaintiff also testified that his signature on the purported original Note was in black ink.  Plaintiff conceded that it was possible that the endorsement on the Note was added after he signed the Note in February 2005.

13.     After the Adams County Court issued the order authorizing sale, plaintiff filed a verified complaint [Docket No. 1] in this Court on June 20, 2013, asserting claims for (1) violations of his due process and equal protection rights under the Fourteenth Amendment, (2) violation of 42 U.S.C. § 1985(3), (3) fraud by omission and nondisclosure, (4) common law conspiracy, (5) negligent infliction of emotional distress, and (6) intentional infliction of emotional distress.  Docket No. 1 at 2.  That same day, plaintiff filed a motion for a temporary restraining order ("TRO"), seeking to enjoin the

---

[3]Defendants did not seek to admit the alleged original Note into evidence.

foreclosure sale of the Residence scheduled for June 26, 2013.  Docket No. 3; Docket No. 8.

14.    On June 24, 2013, the Court denied plaintiff's request for a TRO because plaintiff's motion did not comply with D.C.COLO.LCivR 65.1A and Fed. R. Civ. P. 65(b)(1)(A).  Docket No. 9 at 2-3.  In addition, the Court found that plaintiff's motion for a TRO did not establish a likelihood of success on the merits or that plaintiff would suffer irreparable harm because the motion was one page long, captioned as a proposed order, and contained no arguments or facts in support of the motion.  *Id.* at 1-5. Moreover, the Court ruled that it would not schedule that portion of plaintiff's motion requesting a preliminary injunction until plaintiff filed an information sheet as required by Local Rule 65.1C.  *Id.* at 5.

15.    On July 12, 2013, plaintiff filed an information sheet, Docket No. 19, and filed proof that he served all defendants with process.  Docket Nos. 20-24.  As a result, the Court scheduled the preliminary injunction hearing for August 16, 2013.  Docket No. 28.

16.    On August 6, 2013, the Court issued a Minute Order [Docket No. 32], ordering plaintiff to file a brief explaining the grounds upon which he believes he is entitled to a preliminary injunction.  In his responses, plaintiff clarified that he seeks injunctive relief based on two arguments: (1) U.S. Bank is not the real party in interest entitled to initiate a non-judicial foreclosure; and (2) the Rule 120 proceedings violated his right to due process and equal protection.  *See* Docket Nos. 33, 34.

17.    The public trustee foreclosure sale of the Residence is currently

scheduled for August 21, 2013.  Plaintiff, however, did not name the Public Trustee of

Adams County as a defendant in this case, there is no evidence that the Public Trustee

was given notice of the preliminary injunction hearing, and the Public Trustee did not

appear or participate in the preliminary injunction hearing.

## II.  ANALYSIS

### A.  Abstention

As a threshold matter, the Court finds that it has jurisdiction to decide the issues

presented in this case.  Although a state court has authorized the sale of the Residence

after a Rule 120 hearing, the Tenth Circuit held in *In re Miller*, 666 F.3d 1255, 1262

(10th Cir. 2012), that the *Rooker-Feldman* doctrine does not preclude a district court

from entertaining collateral attacks from state court decisions granting orders

authorizing sales.  As Rule 120 notes, "granting of [a Rule 120 motion] shall be without

prejudice to the right of any person aggrieved to seek injunctive or other relief in any

court of competent jurisdiction."  Colo. R. Civ. P. 120(d).  Because plaintiff collaterally

attacks the Adams County District Court's order authorizing sale, the Court finds that

plaintiff's arguments are properly raised in this case.  *See Plymouth Capital Co., Inc. v.*

*Dist. Court of Elbert Cnty.*, 955 P.2d 1014, 1017 (Colo. 1998) (noting that Rule 120

proceedings relate to narrow issues and "[i]f the Rule 120 court enters an order of sale,

the Debtors may then present evidence showing a likelihood of success on the merits of

their defenses in support of injunctive relief in the companion case"); *Rosenfield v.*

*HSBC Bank, U.S.A.*, 681 F.3d 1172, 1190 (10th Cir. 2012) ("*Rosenfield I*") (noting that

Rule 120 hearings are "designed to address in summary fashion issues related

*specifically to the existence of default*" and are not entitled to "preclusive effect")
(emphasis in original; internal citations omitted).

In addition, Colorado law expressly bars 42 U.S.C. § 1983 claims during Rule
120 proceedings.  *See* Colo. R. Civ. P. 120(d) ("[t]he scope of inquiry at such hearing
shall not extend beyond the existence of a default or other circumstances authorizing,
under the terms of the instrument . . . [the] exercise of a power of sale").  In this case,
the Rule 120 proceedings have concluded and the Adams County District Court has
issued an order authorizing the sale of the Residence.  Thus, because the Rule 120
hearing did not allow plaintiff to raise 42 U.S.C. § 1983 claims, the Court finds that
plaintiff's collateral attack of the Rule 120 hearing is not barred by *Younger*.  *See Crown
Point I, LLC v. Intermountain Rural Elec. Assoc.*, 319 F.3d 1211, 1215 (10th Cir. 2003)
(noting that a plaintiff does not have an adequate opportunity to raise federal claims in
state court when the "state law clearly bars the interposition of the [federal statutory]
and constitutional claims") (citation omitted).

### B.  Preliminary Injunction

A party seeking a preliminary injunction must show (1) a likelihood of success on
the merits, (2) a likelihood that the movant will suffer irreparable harm, (3) that the
balance of the equities tips in the movant's favor, and (4) that the injunction is in the
public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).  The
Tenth Circuit has made it clear that "because a preliminary injunction is an extraordinary
remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v.
Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citation
omitted).

8

Because "the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until trial on the merits can be held," the Tenth Circuit has identified the following three types of specifically disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation omitted).

Plaintiff's motion for a preliminary injunction [Docket No. 3] does not specify what form an injunction would take. His Ammended [sic] Brief Explaining the Grounds Upon Which Plaintiff is Entitled to Injunctive Relief [Doc. No. 34] states that "an injunction should be granted to withdraw the foreclosure." *Id.* at 2; *see also id.* at 5 ("plaintiff's request for injunctive relief should be granted . . . and the foreclosure withdrawn until a jury trial takes place"). The Court construes this language to request that the Court order one or more of the defendants to withdraw or somehow terminate the August 21, 2013 foreclosure sale.

Pursuant to § 38-38-109(1), a qualified holder, such as the bank defendants, may file a "written request" with the Public Trustee to continue a foreclosure sale.[4] Colo. Rev. Stat. § 38-38-109(1). Because plaintiff does not seek to enjoin the public trustee foreclosure sale itself, despite plaintiff's failure to name the Public Trustee as a defendant, the Court may provide plaintiff with some form of equitable relief by directing

---

[4]The statute states that the Public Trustee "may continue" the foreclosure sale upon such request, implying that the Public Trustee has the discretion to ignore such a request and conduct the sale nevertheless. Colo. Rev. Stat. § 38-38-109(1).

the bank defendants to file a written request with the Public Trustee to continue the foreclosure sale. *See, e.g., Rosenfield v. HSBC Bank, USA*, No. 10-cv-00058-MSK, 2010 WL 195019 at *2 (D. Colo. Jan. 13, 2010) ("*Rosenfield II*"). However, because plaintiff requests that the Court order the bank defendants to act in a particular manner, plaintiff seeks a disfavored mandatory injunction and plaintiff must make a heightened showing to support the grant of such injunctive relief. *Schrier*, 427 F.3d at 1260-61 (citations omitted).

The majority of plaintiff's claims seek money damages. Claims for monetary relief fail to demonstrate irreparable harm since plaintiff can be awarded such relief even after foreclosure. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) ("An irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.") (quotation and emphasis omitted). The crux of plaintiff's preliminary injunction argument here is that U.S. Bank does not have standing to foreclose on the Residence because it is not the real party in interest and that the Rule 120 hearing violated his due process rights. *See* Docket Nos. 33, 34. Thus, for the purposes of this motion, the Court will limit its inquiry to the real party in interest defense as well as plaintiff's due process claim because these are the only arguments relevant to his request for injunctive relief.

### 1. Real Party in Interest Defense

Plaintiff raises three arguments to show that U.S. Bank does not have standing to initiate foreclosure proceedings. First, he argues that the Adams County District Court erred in issuing the order authorizing the sale because it did not review the original Note

or the original Deed of Trust during the Rule 120 hearing.  Docket No. 34 at 4.  Second, plaintiff claims that Wells Fargo's assignments of the Deed of Trust and the Note are invalid.  *Id.*  Third, plaintiff contends that U.S. Bank cannot foreclose on the property because it is not entitled to enforce the original Note.  Docket No. 33 at 2-3.

### a.  Background on Rule 120 Proceedings

In Colorado, an interested party may request that a court enter an order authorizing the public trustee to sell real property when the power of sale is contained in a deed of trust.  *Amos v. Aspen Alps 123, LLC*, 280 P.3d 1256, 1259 (Colo. 2012).  Colorado Rule of Civil Procedure 120 provides the procedure through which the owner of an evidence of debt secured by a deed of trust may obtain a court order authorizing a public trustee's foreclosure sale.  Colo. R. Civ. P. 120(a).

To secure an order authorizing sale, the moving party must file a verified motion with a state district court requesting an order authorizing sale.  Colo. R. Civ. P. 120(a).  The motion must "specify the default or other facts claimed by the moving party to justify invocation of the power of sale."  *Id.*  Upon receipt of the motion, the state court clerk sets a date for a hearing on the motion.  *Id.*  Any interested party may file a response no less than seven days prior to the scheduled hearing.  Colo. R. Civ. P. 120(c).  If no response to the motion is filed, "the court shall examine the motion and, if satisfied that venue is proper and the moving party is entitled to an order authorizing sale upon the facts stated therein, the court shall dispense with the hearing and forthwith enter an order authorizing sale."  Colo. R. Civ. P. 120(e).  The issuance of an order authorizing sale permits the public trustee to proceed with a foreclosure sale.  *See* Colo. Rev. Stat. §§ 38-37-104(b), 38-38-100.3(16).

11

The scope of the inquiry in any Rule 120 hearing "shall not extend beyond the existence of a default or other circumstances authorizing, under the terms of the instrument described in the motion, exercise of a power of sale contained therein, and such other issues required by the Service Member Civil Relief Act."  Colo. R. Civ. P. 120(d).  To determine whether there is a "reasonable probability" that the moving party is entitled to an order authoring the sale, the district court must consider "the evidence offered by the creditor seeking the order of sale [and] also [ ] any evidence offered by the debtor to controvert the moving party's evidence or to support" a debtor's legitimate defense to the order authorizing sale.  *Goodwin v. Dist. Court In & For the Sixteenth Judicial Dist.*, 779 P.2d 837, 842 (Colo. 1989); *see Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 512 (Colo. App. 2006) (noting that a district court must consider "all relevant evidence" in a Rule 120 hearing).  For a moving party to show that it is entitled to initiate a public trustee foreclosure sale, it must provide evidence of default and establish that it is the real party that is entitled to enforce the power of sale contained in the deed of trust.  *Goodwin*, 779 P.2d at 843.  By contrast, a debtor objecting to the issuance of an order authorizing sale may present relevant evidence challenging whether the "moving parties are the real parties in interest and also [whether] the asserted defenses of waiver and estoppel" are applicable.  *Goodwin*, 779 P.2d at 844.

Although neither the grant nor denial of a motion under Rule 120 is directly appealable, it is "without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction."  Colo. R. Civ. P. 120(d). Because the scope of the inquiry in a Rule 120 proceeding is limited to the existence of

12

a default or other circumstances authorizing the sale, a collateral action is usually necessary to resolve remaining outstanding issues.  Colo. R. Civ. P. 120(d); *Ragsdale Bros. Roofing, Inc. v. United Bank of Denver N.A.*, 744 P.2d 750, 754 (Colo. App. 1987). In a collateral attack, debtors "may then present evidence showing a likelihood of success on the merits of their defenses in support of injunctive relief" from the order authorizing the sale.  *Plymouth*, 955 P.2d at 1017.  However, Rule 120 and the Colorado statutes are silent about which party has the burden of proof and what type of evidence a party must present in order to secure an injunction on a collateral attack.[5]

Under Colorado law, a party seeking to initiate a public trustee foreclosure sale must be the "holder of an evidence of debt."  Colo. Rev. Stat. § 38-38-101(1).  Banks, agencies, and other entities may be "qualified holders" of an evidence of debt and may also initiate public trustee foreclosure sales.  Colo. Rev. Stat. § 38-38-100.3(20).  A "holder of an evidence of debt" is a person in "actual possession of" or "entitled to enforce an evidence of debt."  Colo. Rev. Stat. § 38-38-100.3(10).  In addition, § 38-38-100.3(10) states that the following persons are presumed to be holders of an evidence of debt:

---

[5]In *Goodwin*, the Colorado Supreme Court noted that, once a debtor raises the real party in interest defense in a Rule 120 proceeding, "the burden should devolve upon the party seeking the order of sale to show that he or she is indeed the real party in interest."  779 P.2d at 843.  Although *Goodwin* describes the relative burdens of proof in a Rule 120 hearing, the burden of proof may possibly be reversed in a collateral attack since the person seeking relief from the Rule 120 order bears the burden of showing entitlement to such relief.  *See* Colo. R. Civ. P. 120 (noting that an aggrieved person may seek injunctive relief); *Plymouth Capital Co., Inc. v. Dist. Court of Elbert Cnty.*, 955 P.2d 1014, 1017 (Colo. 1998) (noting that the aggrieved parties "may then present evidence showing a likelihood of success on the merits of their defenses in support of injun*c*tive relief" from the order authorizing the sale) (emphasis added).

(a) The person who is the obligee of and who is in possession of an original evidence of debt;

(b) The person in possession of an original evidence of debt together with the proper endorsement or assignment thereof to such person in accordance with section 38-38-101(6);

(c) The person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank; or

(d) The person in possession of an evidence of debt with authority, which may be granted by the original evidence of debt or deed of trust, to enforce the evidence of debt as agent, nominee, or trustee or in a similar capacity for the obligee of the evidence of debt.

Colo. Rev. Stat. § 38-38-101.3(10).  An evidence of debt means a "writing that evidences a promise to pay or a right to the payment of a monetary obligation, such as a promissory note, bond, negotiable instrument, a loan, credit, or similar agreement, or a monetary judgment entered by a court of competent jurisdiction."  Colo. Rev. Stat. § 38-38-100.3(8).

Although Colorado statutes define a holder of an evidence of debt as a person with actual possession of or entitled to enforce an evidence of debt, a party initiating a public trustee foreclosure sale is not required to produce the original evidence of debt. Colo. Rev. Stat. § 38-38-101(1); *In re Miller*, 666 F.3d at 1264.  Instead, a party moving for a public trustee foreclosure sale may establish its standing to foreclose by filing with the public trustee (1) a copy of the evidence of debt and a certification signed by the holder or the holder's attorney stating that the copy is true and correct and (2) a copy of the deed of trust and a certification by the holder or the holder's attorney stating that the copy is true and correct.  Colo. Rev. Stat. §§ 38-38-101(2)(a), 38-38-101(1)(b)(II).  If the moving party proceeds with the public trustee foreclosure sale without producing the

14

original evidence of debt, proper indorsement or assignment, or the original deed of trust, the moving party must indemnify the homeowner from economic losses – including court costs and attorney's fees – "in the event that the original evidence of debt is presented for payment" by a third party.  Colo. Rev. Stat. §§ 38-38-101(2)(a), 38-38-101(1)(b)(II).

### b.  Plaintiff's Arguments

With regard to plaintiff's first argument, the Court finds that plaintiff fails to demonstrate a likelihood of success in proving that the Adams County District Court erred in issuing an order authorizing sale.  Because Colorado law does not require production of the original Note or Deed of Trust to complete a non-judicial foreclosure, it was sufficient for defendants to produce certified copies of the Deed of Trust and the Note in the Rule 120 hearing.  Colo. Rev. Stat. §§ 38-38-101(1)(b)(II), 38-38-101(2)(a).  The argument that the Adams County District Court did not review the original loan documents, Docket No. 33 at 2; Docket No. 34 at 4, fails to show the inability of the state court to issue an order authorizing sale.  *Schrier*, 427 F.3d at 1260.

Plaintiff's second argument is that the assignment of the Note from Wells Fargo to U.S. Bank is fraudulent because the certified copies the bank defendants provided at the Rule 120 hearing had a false written endorsement and an Allonge detached from the Note.  Docket No. 33 at 2; Docket No. 34 at 2-3.  The Court finds that plaintiff has not presented any evidence reasonably challenging the validity of the assignments of the Deed of Trust or the Note from Wells Fargo to U.S. Bank.

Plaintiff admitted that Def. Ex. A was an accurate copy of the original Deed of Trust.  Moreover, plaintiff did not challenge Wells Fargo's assignment of the Deed of

15

Trust to U.S. Bank that is recorded with the Adams County Public Trustee.  *See* Def. Ex. B.  Plaintiff's only argument regarding the assignment of the Deed of Trust is that the assignment did not occur until 2011.  To the extent this argument was relevant to the non-judicial foreclosure proceedings in 2009 and 2011, it is largely irrelevant to this action because the assignment occurred before defendants filed for an order authorizing sale in January 2013.  *See* Colo. Rev. Stat. § 38-38-101(8) (noting that the holder of an evidence of debt may assign the secured debt at any time during the pendency of a foreclosure action).  Thus, the fact that Wells Fargo assigned and recorded the assignment of the Deed of Trust in 2011 does not challenge the validity of the assignment.

The bank defendants did not move the introduction of a copy of what they claimed was the original Note into evidence.  Although he would not admit it was the original Note, plaintiff did agree that Def. Ex. C was an accurate copy of the purported original Note.  Moreover, plaintiff testified that it was his signature on the document (although he could not say if it was his original signature as opposed to a copy of his signature), that his signature appeared in black ink just like on the original Deed of Trust, that he only used one pen to sign all of the documents at the closing, that the original Note was on legal-sized paper, and that Wells Fargo's endorsement could have been added to the Note after February 2005.  The original Note has an endorsement assigning the Note from Wells Fargo to U.S. Bank.  *See* Def. Ex. C.  Although plaintiff argues that the endorsement is fraudulent, Docket No. 34 at 4, he presents no evidence in support of such an assertion.  Moreover, plaintiff's argument that the Allonge is invalid because it is not attached to the Note, Docket No. 34 at 4, is belied by plaintiff's own

16

review of the purported original Note at the preliminary injunction hearing, where he admitted it was attached.  Plaintiff presents no support for his argument that the endorsement on the Note is fraudulent or that the Allonge is invalid.  Considering the evidence and the lack of evidence presented at the hearing, the Court finds that it is more likely than not that defendants are in possession of the original Note.  Accordingly, because defendants have shown that they are more likely than not in possession of the original Deed of Trust and the Note –  both of which reflect that they have been assigned from Wells Fargo to U.S. Bank – the Court finds that plaintiff has not shown a likelihood of success on his argument that Wells Fargo's assignments of the Deed of Trust and the Note to U.S. Bank are invalid.  *See Schrier*, 427 F.3d at 1260.

With regard to plaintiff's third argument that U.S. Bank is not entitled to enforce the original Note, the Court finds that U.S. Bank is a qualified holder given that it is in "possession" of or "entitled to enforce" an evidence of debt.  Colo. Rev. Stat. §§ 38-38-100.3(20), 38-38-100.3(10).  Although U.S. Bank provided certified copies of the Note and the Deed of Trust, as opposed to providing the originals, at the Rule 120 hearing and failed to admit the originals during the preliminary injunction hearing, plaintiff admitted on cross-examination that the bank defendants possess the original Deed of Trust.  Moreover, while plaintiff on cross-examination refused to admit that the Note shown to him was the original, he could not articulate any basis for doing so other than stating that his signature would have to be authenticated.[6]  Thus, even if, for purposes

_____

[6]The Court notes that defendants are not required to reunite the Note and the Deed of Trust before a non-judicial foreclosure. *See Lakeside Ventures, LLC v. Lakeside Dev. Co.*, 68 P.3d 516, 519 (Colo. App. 2002) (Deed of Trust is security for the underlying note, and may be foreclosed upon if the terms of the note are not honored);

of a collateral attack of a Rule 120 proceeding, plaintiff's mere allegation that a defendant bank is not the real party in interest is sufficient to shift the burden of proof to the bank to show more than certified copies of the Note and Deed of Trust, the bank defendants here have carried that burden.  Because U.S. Bank produced evidence showing that it holds valid assignments of both the original Note and the Deed of Trust, it provided enough evidence to establish that it is entitled to the statutory presumption as the holder of an evidence of debt for the purposes of the motion before the Court. Colo. Rev. Stat. § 38-38-100.3(10)(b); *see McDonald v. OneWest Bank*, *F.S.B.,* 680 F.3d 1264, 1266 (10th Cir. 2012) (noting that under Colorado law, "a person entitled to enforce an instrument may be a holder, and need not be an owner, of the instrument") (citation omitted).  By contrast, plaintiff has not presented any evidence rebutting this statutory presumption.  The Court finds that plaintiff has not shown that he has a likelihood of success on his claim that U.S. Bank is not the real party in interest.

Because plaintiff has not shown that he is likely to succeed on the merits of his defense, the Court need not discuss the other preliminary injunction factors.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (noting that a plaintiff seeking a preliminary injunction must establish all four preliminary injunction factors); *RoDa Drilling*, 552 F.3d at 1209 n.3 (noting that, to secure a disfavored injunction, plaintiff must make a heightened showing of the four preliminary injunction factors).

---

*Knowles v. Bank of Am., N.A.*, No. 12-cv-00621-RBJ, 2012 WL 5882570, at *2 (D. Colo. Nov. 21, 2012) (noting that defendants are not required to reunite the promissory note and deed of trust before foreclosing after securitization).

### 2.   Due Process

Plaintiff claims that his due process rights were violated because several procedural defects occurred at the Rule 120 hearing that impeded his ability to present his arguments.  Because the Court finds that plaintiff cannot establish that he will suffer irreparable harm absent an injunction, the Court will not discuss whether plaintiff has carried his burden as to the other preliminary injunction factors.

To satisfy the irreparable harm requirement, a plaintiff must demonstrate "a significant risk that he or she will experience harm that cannot be compensated after the fact."  *Greater Yellowstone Coal.*, 321 F.3d at 1258 (emphasis omitted).  The party seeking injunctive relief must show that the harm is certain and great and "of such imminence that there is a clear and present need for equitable relief."  *Schrier*, 427 F.3d at 1267.  As a general rule, economic loss "usually does not, in and of itself, constitute irreparable harm [because] such losses are compensable by monetary damages." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir.2003).  Moreover, a showing of "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff testified that he opposed the non-judicial foreclosure in this case because he believed that the wrong entity was foreclosing on the Residence.  In addition, plaintiff admitted on cross-examination that since he is in default, the real party in interest, whoever that may be, is entitled to foreclose on the Residence.  Plaintiff testified that he believes Wells Fargo, and not U.S. Bank, is the real party in interest that is entitled to foreclose on the Residence.

19

Because plaintiff's anticipated injury is not that he will lose his property, but rather that U.S. Bank and not Wells Fargo will foreclose on his property, the Court finds that such an injury does not constitute irreparable harm.  Because U.S. Bank proceeded with the foreclosure without providing the original evidence of debt, it has "agreed to indemnify and defend any person liable for repayment of any portion of the original evidence of debt in the event that the original evidence of debt is presented for payment."  Colo. Rev. Stat. § 38-38-101(2).  In light of that indemnification, plaintiff does not risk being responsible to a party other than U.S. Bank for the original debt and, therefore, any harm that would flow from Wells Fargo or any other third party seeking to recover from plaintiff is not irreparable.[7]  *See Greater Yellowstone Coal.*, 321 F.3d at 1258.  Thus, because plaintiff admitted he is in default and that the real party in interest has the right to foreclose on his property, any claimed injury in this case is not irreparable and may be compensated in monetary damages, even after a foreclosure sale.  *See* Colo. Rev. Stat. § 38-38-101(2).  Because plaintiff does not show that he is likely to suffer irreparable harm absent an injunction, the Court need not reach the other preliminary injunction factors.  *See Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997) ("a plaintiff who cannot show any irreparable harm at all from the withholding of a preliminary injunction is not entitled to the injunction however strong his case on the merits, for he has no need for preliminary relief in such a case, no need therefore to short circuit the ordinary processes of the law").

---

[7]The Court notes that, because Wells Fargo is a party to these proceedings and it has not objected to U.S. Bank's foreclosure, plaintiff's arguments regarding the wrongful entity foreclosing on the Residence are entitled to less weight because Wells Fargo can fully protect its own interests.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the portion of the Motion for TRO and Preliminary Injunction of

Rule 120 [Docket No. 3] filed by plaintiff James Gregory May seeking a preliminary

injunction is **DENIED**.

DATED August 20, 2013.

BY THE COURT:

_s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge